Good morning, your honors. My name is Susie Hensler from the Office of the Federal Public Defender of Maryland on behalf of the appellant Jeffrey Neuhauser. A term of supervised release begins when a sentence of incarceration expires. And that term is not told when a person is civilly detained after that date. In this case, BOP records indicate that Mr. Neuhauser's release from his sentence of incarceration occurred on June 6, 2007. However, he was held for four and a half years after that date pending a determination of whether or not he would be civilly committed pursuant to the Adam Walsh Act. And ultimately, Judge Boyle of the Western District of North Carolina determined that he did not meet the requirements for civil commitment and ordered his release. You say he was held. The government says he was imprisoned. That's right, your honor. There is a distinction. A person is either, in this situation, there's a distinction between being imprisoned in connection with a criminal conviction and being detained pursuant to a civil statute. And here, we clearly have the latter. Mr. Neuhauser was detained pursuant to the stay of release provision of the Adam Walsh Act. The Attorney General files a certification that he's dangerous, right? That's right. Just before his sentence is to expire, it says his sentence is going to end here, and we want to keep him in custody because he's dangerous to society. And then the process is they have a hearing. He's entitled to a court hearing to see whether the Attorney General was right. And here, he was held for so long because there was a lot of litigation over that Adam Walsh Act. That's correct, your honor. Including several cases that came through this court, including some of which he was involved. That's right, your honor. Isn't that right? And the government always said they were being held as civilly. That's right, your honor. They referred to it as that. And then Judge Boyle ruled in his favor? That's right, your honor. And what happened to the appeal? What happened to the appeal of him? Did the government not appeal Judge Boyle? To my knowledge, the government did not appeal. The government gave up. That's right. Well, a whole bunch of them have appealed. I mean, so on this ballot, when the district court ruled that the certification was not valid or not proven, the government didn't contest Judge Boyle's ruling, apparently. And he was released from Butner. Yes, your honor. Correct? And all that time he'd been over at Butner. But once he went in there civilly, they put him on a different end of the prison, right? That's right, your honor. He was on one end before, and then they sent him over on the other end, where they had all the civil people. That's right. Committed post-sentence. And a whole crowd of them over there. Okay. That's right, your honor. A resolution of this issue indeed relies on acknowledging the difference between being imprisoned, as the former proponents of the challenges to that law argued. They did argue that they were imprisoned. And there is a difference, as they learned, between being imprisoned and being detained. But they were, in fact, in a prison. That's right, your honor. Butner Federal, whatever it's called down there, prison institution. By the Bureau of Prisons, it's a hospital. They were living in a prison, but detained pursuant to a civil statute by the Bureau of Prisons. And BOP records here show that on the date that his sentence of incarceration expired, June 6, 2007, he was processed for release and then quickly readmitted civilly pursuant to the Adam Walsh Act. It seems to me that the underlying theme of your argument is that to be imprisoned, you have to be confined pursuant to a punishment. In connection with a conviction, your honor. Okay. A conviction for a criminal offense. That's right, your honor. What about pretrial detention? Are those people imprisoned? Yes, your honor. In those cases, the courts have- There hasn't been any conviction by definition. That's right, your honor. But in this case- And I thought you just told me that that was the definition of what you need for imprisonment. Well, your honor, in this case, we are dealing with something different. In this case- Well, you know, that's the way the law goes. You don't get the identical facts each and every time. Or maybe not ever. That's right, your honor. But we are at- Remember, we're trying to figure out what imprisonment means. And you told me that in order to be imprisoned, you had to have a criminal conviction, had to be associated with a criminal conviction. That's right, your honor. And then I said, well, what about pretrial detention? Is that imprisonment? And your answer is yes. Yes, your honor. Even though there is no criminal conviction. No, because ultimately, when determination of whether or not an individual will receive credit for that period of time is whenever that determination is made, there will either be a conviction or not. In this case- So your argument, I guess, is that the pretrial detention is in connection with a criminal conviction. That's right, your honor. Is that what you're saying? Yes, your honor. Well, you couldn't be detained under this act unless there had been, at one point, a criminal conviction. So isn't your detention, even civilly here, in connection with a criminal conviction? No, your honor. It seems to me it is just as much as the pretrial detainee. No, your honor. And this is where the authority, which I cited in my 28th J letter, really comes into play, 18 U.S.C. 3585B, which determines the calculations of an individual's term of imprisonment. In that statute, an individual is afforded no credit towards their term of imprisonment. And those same words are used- But you just told me pretrial release counted as imprisonment. That's right, your honor. Because under that statute, that sort of time spent in custody is given credit. However, any time spent in civil detention is not given credit. And so that's why this case is different than those cases where there is pretrial detention. It's different to be sure, but going back to the point of what is needed for confinement, either you need it to be with or following criminal conviction, or you don't. And I think that the pretrial detention thing sort of messes up your analysis. Well, your honor, this is, again, we would argue a distinct situation because this is a case where an individual is being detained solely pursuant to a civil statute. This is why this case is different than Johnson, for instance. This is a case where that overlap between supervised release and civil detention is really the question. There's no dispute that a term of incarceration has expired. The question is whether or not a term of supervised release has begun. But the question in Johnson was whether or not the defendant had been freed from confinement. And if that's the test, there's really no distinction here between Johnson in this case or Mosby, which the Eighth Circuit determined was that that's a civil confinement case. And the court there found that because the defendant or the committee had not been released from confinement, the supervised period of release couldn't start until he was. Your honor, Johnson is inapplicable here because that case dealt exclusively with detention in connection with— And no, your honor, it is not because in this case we have a civil statute. And that is what—detention pursuant to a civil statute. And that is really the key distinction. Your honors have to determine whether or not this period of overlap between a term of supervised release, following a term of incarceration and a term of supervised release, and detention pursuant to the Adam Walsh Act will be credited or not. And so for that reason, they are distinct. One of the other reasons that courts have given for the contrary view of your position in the case is that really this is for your client's own good, that the whole purpose of supervised release is to give the defendant or the committee an opportunity to readjust and reorient himself towards society. What do you say in response to that? Well, your honor, in this case my client has requested that his term of supervised release be terminated as of five years from the date that his sentence of incarceration expired. And certainly had the government— Somebody was on the other side of the—other end of Butner there. That's exactly right, your honor. His term of supervised release began on the date his term of incarceration expired, and it ran concurrent to his civil detention. And it's useful to analogize to situations in which an individual is released from custody, so let's say an individual is released from FCI Petersburg, and never reports to the probation office to meet their probation officer and determine what their conditions of supervised release are. Nothing would prevent the government from, three months later, seeking to detain that person for a violation of supervised release. Here they knew where he was, right? That's right, your honor. They had access to him. Are you saying they could have come down there and signed him up? Yes, your honor. Nothing prevented them from doing that. The United States Probation Office routinely works with individuals in home detention, serving terms of intermittent confinement, individuals living in halfway houses where their movements restrict. The probation office is capable of supervising those individuals. Here, the probation office did not reach out to Mr. Neuhauser to supervise him. And for that reason— All those factual scenarios, though, include some areas in which the defendant is actually released, whereas here, he's there 24-7. I mean, what's the purpose of supervised release in that context? Well, your honor, the purpose of supervised release could have been served by— Not release, I guess. It just doesn't seem to fit. But, your honor, the exact same dilemma applies to an individual in home detention, for instance, who is confined to their residence 24 hours a day, 7 days a week. This court does honor the distinction between civil detention and incarceration in connection with a criminal conviction. And here, that distinction really matters. And so, for that reason, I would ask that the court find that his term of supervised release began on the date that his sentence of incarceration originally expired and continued from that point on. How many cases do you have that support your proposition? United States v. Turner, the recent Ninth Circuit—well, relatively recent Ninth Circuit. That's your best case? The analysis in that case is spot on. And I— Can I ask you about something that I didn't think was taken account of in that case? Do you have a copy of 3624E? Yes, your honor. Or C. No, E. Aging eyes cannot read. The statute seems to make a distinction between the term of supervised release commences on the day the person is released from imprisonment. And then the tolling. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for federal, state, or local crime. Now, if those—if we buy your argument, we read out of the statute the in connection with. It has no meaning. No, your honor. No? No, that's—I would rather recommend that the court rely on the first part, which refers to release from imprisonment, and refer to section A of the statute. Well, we have this whole thing, this little definition that tells us about release, and then it tells us about the tolling. They're all in one provision. It looks like they're all supposed to be taken together. I understand that you want us to go somewhere else. But the way one reads, you know, the Supreme Court tells us to, and the way law school tells us to, is we read the statute that's there, the provision altogether. Yes, but this provision sets out two distinct parts of the— It talks about when the term of supervised release commences and when it's tolled. That's right, your honor. And when it refers to release, it refers to section A of the statute, which is titled date of release, and says, on the date of the expiration of the prisoner's term of imprisonment. And here, that is June 7, 2007. The question then becomes, did his term of supervised release, was it tolled by his civil detention? And, again, it was not tolled by his civil detention in this case because that was not in connection with a conviction. So I understand that your honor is reading this together, but I think in order to flesh out all of the key arguments here, it's really important to parse out the analysis to this two-step process. But there are some other courts, district courts, have agreed with you? Yes, your honor. Since the Turner ruling, the district court in the Seventh Circuit has ruled consistent with the Turner court. Obviously, the Mosby court came out the other way. And there are several others that have gone the other way. That's right, your honor. How many circuits have gone the other way? Just one, the Eighth Circuit. The Circuit split is two circuits. That's right, your honor. So we'd be the third one to weigh in. That's right, your honor. You may end up in Supreme Court with this thing. I hope not, your honor. I hope we resolve this here. I do hope we resolve this here in favor of my client, but I understand that my time has expired. Thank you. May it please the court. My name is Christy O'Malley, Assistant United States Attorney on behalf of the United States. The government asks this court to affirm the district court's denial of the motion to terminate supervised release because supervised release in this case did not commence until February 3rd, 2012, which is the day that Jeffrey Neuhauser was released from imprisonment. Do you have an example of a statute other than this one in which an individual is imprisoned? An example of a statute? Yes, there's a couple examples of statutes. Civil statutes? There's examples of, first off, the pretrial detention statute, pretrial detention that your honor has referenced multiple times, which is section 3041. And it's been litigated? In other words, some court has said, even though this is a civil statute, you're imprisoned under it? Your honor, the statute itself specifically says you have a choice of being imprisoned or released prior to trial. So it uses the word imprisoned even though it's in the pretrial context. Which statute? Sorry, that's section 3041 of Title 18. It specifically says in the pretrial context you're either imprisoned or released pending trial. That's a criminal statute. So there's section 4246, which is a civil commitment statute. That's here? Yes. That's the one that has to do with this stuff? 4246? No, 4248, your honor. It's the twin. So 4246 has to deal with when you have a mental defect or some other reason why you can't be released. I don't believe that the meaning... I did know about those two. Right, I don't believe there's any litigation on the meaning of release from imprisonment. You don't have any statutes that you don't know of? I'm not aware of any statutes that have litigated the exact meaning of release from imprisonment. Okay, I changed my question slightly. Get away from the litigation. Do you have other statutes which you believe sanction imprisonment in the civil context? I think the most analogous one is section 4246, which deals with the mental defect and is very parallel to this statute. The procedures in place are almost identical. That statute has been in effect since 1984, long before the 2000 decision in Johnson. What's also interesting about that statute is this... It was in existence. Well, it's been there forever before they had Walsh Act, right? 4246? Correct, your honor. The other interesting thing... And if a prisoner's in custody and finishes his sentence and he's dangerous, the attorney general and you all were able to keep him in custody. That's correct, your honor. But... That's correct. Did this kind of stuff ever come up in that context? I'm not aware of any litigation on specifically the meaning of release from imprisonment in the context of section 4246. They got a hospital down there that they keep some of them in. That's correct, your honor. Hospital units. That's correct. What I can tell you about section 4246 is this court, although in an unpublished decision that Judge Motz was a part of, in a per curiam decision in 1996, assumed that supervised release would begin at the end of the civil commitment process under section 4246. In footnote 4 of that decision, it specifically says that assuming that that individual, Anderson, were unconditionally discharged, he would then begin his term of supervised release in connection with his criminal conviction. Is that in your brief? Yes, your honor. Anderson is cited in my brief, and I can also give you the site of it if you want, but it's a four-circle decision. That's right. Again, that's a footnote. It's not the holding, and it's a per curiam decision unpublished, but I note for the court that the court assumed without consideration that supervised release would begin at the end of the civil commitment process. Another interesting fact is that Judge Boyle also assumed that the supervised release would begin at the end of the civil commitment process, and that was part of the basis for his finding after he went through the factors. In this case, he said in his opinion that supervised release, part of the reason after he went through the factors to find that Jeffrey Neuhauser did not meet the strict criteria to be a sexually dangerous person, he noted that he would begin a term of five years of supervised release, and that he would be under very strict conditions as part of that supervised release. So it turned in in some way to his decision also in making the ultimate determination that he was not sexually dangerous, and I think that's important as well. The other thing that I think has been lost in this argument was so much focus on Section 3624E, which of course is the operative provision. I thought you were going to talk about the Supreme Court case. Well, two things. One, two things that have been lost, Your Honor. I expand. One is the Supreme Court case, obviously, United States v. Johnson decided in 2000, which directly interpreted what the term release from imprisonment means. That's true, and there's language in Johnson that is difficult. But on the other hand, Johnson didn't maintain that he hadn't been imprisoned. He said he was wrongly imprisoned. So there wasn't the same argument as we have here. That's true, Your Honor, but the Supreme Court did not limit its holding in interpreting the language of the statute to only the context. It didn't limit its discussion about the statute. I think its holding only goes to Johnson, and Johnson being imprisoned wrongly, and when his term of supervisory release began. That's its holding. It involves that person in that situation. The defendant here isn't in that situation. So maybe Johnson was dicta for what you want to realize. Mr. Neuhauser. But the rationale, your point is the rationale, and their discussion of these terms is relevant here. Right, Your Honor. And it's not only the rationale. It's the specific interpretation of the exact provision in the statute that applies here. They interpreted release from imprisonment to mean release from confinement. That supervised release cannot begin until the day that you actually are released from imprisonment. What's your best authority for saying what imprisonment means here? What do we look to? What's the number one thing we would look to to determine what imprisonment means under this statute? The number one thing we would look to is how the Supreme Court defined imprisonment, which is confinement. Release from imprisonment means release from confinement. So until release from confinement happens, release from imprisonment doesn't happen. So that these other things that have been talked about, dictionaries and legislative history, those go after, in your mind, Johnson. I think Johnson took into account all of those things in defining what release from imprisonment means. My point in referencing Johnson is that the Supreme Court has already decided for us. They've taken into account the context, the history, the dictionary definitions, and came to the conclusion that release from imprisonment means release from confinement. Well, but the appellant says that, in fact, there was a release, albeit maybe a paper shuffle, but he was discharged from his criminal sentence, transferred over to Butner pursuant to the civil commitment order, and that's an entirely different thing. So how do you deal with that? Well, Judge, there's a couple of ways to deal with that. First... He was physically moved, wasn't he? He was, in fact, physically moved from one wing to another. He was physically moved. He was in Butner in one unit, and when his sentence ended in 2007, he was physically moved to another unit. Yes, Your Honor. Where the civil committees were held. Yes, Your Honor. What he was not was released from the custody of the Bureau of Prisons, which under Johnson says he was not released... To protect the public because he was deemed to be dangerous by the Attorney General. Yes, Your Honor. And then Judge Boyle said he wasn't dangerous, and we're stuck with this. To go back to the question of the release, the fact that there's this argument that he was released on paper, the other big thing that we haven't talked about is Section 4248A, which specifically states that it shall stay the release from prison of an individual when that Certificate of Sexually Dangerous Person is filed. And that can't be lost here because it says stay the release from prison. It doesn't say toll the supervised release period. And so when that... And United States v. Cone... What's that section? Sorry, that's Section 4248A. 4248A is what he's held under. Yes. Right. And that... Stay the release from prison.  That's the section that Comstock dealt with? Yes, Your Honor. And Comstock found that statute not only constitutional, but Comstock specifically said... Sorry, it says shall stay the release. I apologize. The statute says Comstock... Stay the release of the person. Of the person. Right. Comstock interpreted that provision to mean shall stay the release from prison is specifically what Comstock interpreted that provision of 4248A to mean. Comstock's Supreme Court said that? Comstock, the Supreme Court, said... Comstock said shall stay the release of the person means stay the release of the person from prison. That's a direct quote? That is a direct quote. Of the Supreme Court or the statute? Of Comstock, Your Honor. Comstock in the Supreme Court. In the Supreme Court. Because it was here a couple times. Yes, Your Honor. It was also here. And I know all of you are very familiar with the civil commitment statute for multiple appeals, but Comstock does interpret it to mean shall stay the release from prison. Do you have the statute? Do you have Comstock? It's all right. I thought you were getting it. No, I was looking for it. I was looking to see if I had it highlighted. I apologize, Your Honor. No, that's all right. We can certainly read Comstock still one more time. That's fine. I don't want to take up your time. I apologize. If it jumps out at me, I will point you to it, but I believe I said it in my brief. Now, the case in the Eighth Circuit that went your way, they said that Johnson controls this? Yes, Your Honor. And the case in the Ninth Circuit, they were against you. They distinguished Johnson. Yes, Your Honor, and I'll note two things on that point. There was a dissent. There was a strikingly strong dissent. I think when one agrees with dissent, one always finds the right thing. Fair enough. And Turner, the dissent made it clear that they got the law wrong and ignored Supreme Court precedents. In Mosby, You had the Comstock thing cited in your brief. Thank you, Your Honor. In Mosby, it was a three-judge panel that all went in favor of the decision. There was no dissent. That's the Eighth Circuit. Additionally, the majority of district courts that have ruled on this issue have gone in favor. What's the count on that? I don't have the exact count, although I do have a chart of all the cases. I haven't 12 to 2 or 12 to 1? The only district court cases I know of that have gone the way of Turner are Ninth Circuit district court cases and one Seventh Circuit case. What's interesting about the one Seventh Circuit case, and there may be a couple others, what I know is that the count is weighing heavily in favor of the Mosby side. What's interesting about the Seventh Circuit case that Appellant cited is there has been a more recent Seventh Circuit case, a different judge, that actually came out the way of Mosby. So the Seventh Circuit district judges appear to be going two different ways on the issue. Have any of these cases been petitioned for cert? In other words, the Ninth or Eighth Circuit? Yes, and cert was denied. I believe it was the Ninth Circuit. I don't want to misrepresent, but I believe one of the two was, and cert was denied. So the Supreme Court has not weighed on the issue. I just looked it up yesterday, and I can't remember which one, but I do remember, and I was looking for something more than just cert denied, and that was the extent of the... There have been no others in this cert. There have been no others. There has been a decision in the U.S. District Court by Judge Chasnow in the Tobey decision that went in favor of the government. It went the same way as Judge Williams. It went the same way as Judge Williams. And Judge Williams relied on that decision in part, in addition, of course, to the Supreme Court precedent in this case. The appellants say that the government is trying to have it both ways. On the one hand, when it comes to the question of whether or not this imprisonment raises constitutional concerns because of unlawful punishment, the government says, and we have held it, no, no, no, this is civil confinement. It really doesn't implicate any criminal punishment issue. But now you're saying something entirely different. So what are we supposed to do with that? There's two different issues there. There's a question of a term of imprisonment that you serve in connection with a criminal sentence, and there's a term of what does it mean to be imprisoned or confined. And, again, I go back to Section 4248. A statute tells us that the person's release is state. If they're not actually released, they can't start supervised release. You can't be supervised on release if you're never actually released. Your opponent said that there are instances where people are held in detention in a criminal context, home detention, those kinds of things, halfway houses, and the government has no problem supervising those folks. And that's after they have actually been released from the Bureau of Prisons' custody. In this case, again, he's not been... Halfway house in that Bureau of Prisons' custody? Halfway house is the Bureau of Prisons' custody, and I believe, actually, that issue is also not clearly decided of when supervised release starts in terms of a halfway house and whether it starts. I don't have authority on that, so I can't speak for sure on the halfway house versus home detention aspect, but I can say is the person has actually left a BOP facility. They are no longer in the custody of a prison, certainly. The other issue here in looking at the meaning of imprisonment is to look to other statutes that have defined or have used more specific terms. For example, in Section 4101, when Congress talks about transfer of prisoners to other countries, they actually very narrowly define imprisonment in that particular context, and the section makes it clear that it only applies to the particular section at issue, which I think goes through 4115. So it narrows it to just those statutes dealing with transfer of prisoners to other countries, and it says imprisonment means a penalty imposed by a court under which the individual is confined to an institution. So it's very narrowly defined in that context. It is not so defined in the context when talking about supervised release and imprisonment in other contexts, because as I mentioned before, imprisoned is also used in Section 3041 and not defined, and that's in the context of pretrial detention, and that certainly cannot be in context with a punishment for a crime because a person's not yet been convicted. Again, I think the focus on the tolling provision of Section 3624E, the third sentence, is misplaced here because the issue here is whether or not supervised release ever commenced, and in this case, supervised release never commenced because 4248A came into play, which stayed that release from prison. And one thing I wanted to point out in terms of the documents which are at the inmate history, which is at J46 and 47, that appellate relied on is appellate relied on the fact that there is a reference to release for admission change about halfway down the page on Joint Appendix site 46. What was not mentioned is the fact that the word released is actually used five other times before that when the person was released from in-transit facility. So it's not clear to me that the term release has some kind of special meaning in the context of the inmate history. What's also interesting is that in Joint Appendix number 48, which is the inmate locator sheet, which is also internal records of the BOP. I'm sorry, Joint Appendix 48, which is also presumably based on records from the Bureau of Prisons. It's the inmate locator that you find on the website. It notes the release date as February 3, 2012. And one thing that was touched on briefly during Appellant's argument but we haven't discussed fully here is the purposes of supervised release, which would be completely ignored by saying that this individual supervised release term is over. As the Supreme Court in Johnson indicated, part of the reason that they found that there was not credit for the period of imprisonment towards supervised release was because of the important purposes of supervised release in the rehabilitation of an individual and in the reintegration into society. I would submit that this is especially important in this context, in the civil commitment context, when you're dealing with someone who has been deemed a sexually dangerous person and is being evaluated for that purpose, that supervised release is critically important to the reintegration of society, not only for that individual who will get sex offender treatment. But he was ruled not to be a sexually dangerous person. He was ruled not to meet the criteria of a sexually dangerous person. And the government didn't appeal it. That's correct. I mean, that's the law of the case. That doesn't change the fact of his extensive criminal history involving contact offenses with children. That doesn't change the need for supervised release. Whether he meets the specific criteria to be civilly committed does not mean that he doesn't need supervised release and sex offender treatment and restrictions on interaction with children. It's not only for the rehabilitation of that individual, but for the protection of society to determine whether or not he, in fact, will not be a danger. Even if he doesn't meet the highest threshold of being civilly committed, there's still a threshold of some protection to society that supervised release helps maintain as well. So the purposes of supervised release cannot be ignored in determining whether or not someone... when someone's term of supervised release started. That's part of the purpose of the statute. And as far as the... we've touched on it, but as far as the civil versus criminal context, again, you just go back to the plain language of the statute of term of imprisonment. It doesn't indicate here... or, sorry, not even term, just imprisonment. It doesn't indicate here that imprisonment has to only be in the criminal context when you're talking about the commencement provision of when supervised release starts. Civil commitment is... Civil commitment meets the definition of imprisonment in terms of the commencement provision of supervised release. But supervised release cannot begin until that procedure under 4248A is over. In this case, it wasn't over until February 3, 2012, when Mr. Neuhauser was actually released from prison. Can I ask you a question about this document on 46 that you referred us to? And you've talked about all these other times when it says released. Do you know what released from in-transit facility means? I guess it's facility. When others released were released from in-transit facility. You see the difference? Right, Your Honor. Yes, they all are released from in-transit facility, and I honestly... And the other... And the one that they regard as operative here is released. And it actually... All of those are released, plural. I mean, released, past tense, and released for admission change. I just wondered if you knew what any of that meant. No, Your Honor. I don't know the specific meanings of the codes that Bureau of Prison uses as to what release. I just know that the word released was used. And again, yes, you're right. There's past tense versus present tense, and there's a distinction there. But I'm not sure... My point is I'm not sure we can rely on this inmate history as a legal definition of when release for purposes of the statute actually happened. If you have no further questions, then I will... Thank you very much. Thank you. Can I ask you a question at the outset that occurred to me when your colleague was arguing and discussing a question with Judge King? If Judge Boyle had said, or a district court had said, this guy does qualify and he is dangerous and you can continue to confine him, would your argument be the same? Would you say that he's already served his term of supervised release? Yes, Your Honor. That's right, because it commenced and there is nothing thereafter that told the period even though he would be back in... He would just stay at the bus. He keeps staying there. That's right, Your Honor. At that point... So the fact that he's been found not to be sexually dangerous doesn't affect your argument one way or the other? No, Your Honor. And in this case, Judge Motz, I just did want to answer one of the questions that you put to the government, which was that in Mosby, the defendant did petition for cert, and the Supreme Court denied that petition for cert last week on January the 13th. And Mosby is the Eighth Circuit case. That's right, Your Honor. And it's the more recent one. That's right, Your Honor. However, this issue is live. The Adam Walsh Act is a recent statute. You don't have to... We know. The Adam Walsh Act is a recent statute. That's why in this type of case, it doesn't necessarily make sense to simply tally up the numbers, but to really take a firm look at the arguments. I think you can rest assured we'll take a look. I know that, Your Honor. The government is asking that this court find in its favor, on the basis of the plain language of that Section E of the relevant statute. However, at the same time, it's asking that this court refer to other statutes in interpreting that provision and refer to Supreme Court cases with analogous issues to interpret that provision. Well, if we just look at 3624, which is what you want us to look at, and if we go back and look at E again, maybe I didn't articulate my question very well, but it talks about the term of supervised release commencing on the day the person is released from imprisonment, right? And it doesn't say released from imprisonment in connection with a conviction. But in order to have it stayed, it doesn't run during a period in which you're in prison in connection with a conviction, which suggests that you can be imprisoned and released. That can exist without being in connection with a conviction, doesn't it? That's right, Your Honor. But doesn't that sort of undercut your argument that there has to be a criminal conviction here to have imprisonment? No, Your Honor, because in this case, there is so much ambiguity when it comes to these statutory provisions that it is difficult to put all the pieces together. However, with the assistance that the court has given us in its ruling in Comstock, we do know that the court has ruled against individuals like Mr. Neuhauser who have argued that they were being held in criminal detention. So at this point, it would really be to really too finely parse the subject to say at this point they were imprisoned but in connection with civil detention. You mean because they lost the Comstock case? That's right, Your Honor. The government cannot have it both ways. And I understand that the government has cited to all types of things outside of this Section E, the supervision provision, to support its argument. And we have done the same. We've cited to different provisions within the statute, other statutes, including the Adam Walsh Act, which discusses the release of the person, not release of the person from their term of imprisonment. What did we do about the language that she quoted from Comstock's Section 4248 certificate, quote, automatically stays the individual's release from prison? Because in that case, it was not... Your Honor, I don't have my case list in front of me. It's page 16. It's a direct quote. It's not very long. In that case, the Supreme Court was not dealing with this question of whether or not, of really the meaning of imprisonment in that sense. The Supreme Court... And so for that reason, I would ask that the Court, in putting all the pieces together, rule in my client's favor, acknowledge that there's a great deal of ambiguity here, and apply the rule of lenity in Mr. Newhauser's favor, because certainly we've had a very vigorous debate today, and this is not something which can be decided on the plain language of the statute. And here, the best that we can do is determine that supervised release did commence on June 6, 2007, and did not toll thereafter as a result of this detention pursuant to the Adam Walsh Act. So for those reasons, I would ask that the Court reverse the District Court's ruling. Thank you. Thank you very much. We will come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, Robert B. King, Albert Diaz